IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | |
|---|---|
| HOUSTON CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS LINDERMAN GRAHAM, INC.,<br><br>Defendant. | CIVIL ACTION NO. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Houston Casualty Company ("Plaintiff" or "HCC"), by and through its undersigned counsel, files this complaint for declaratory judgment against Defendant Thomas Linderman Graham, Inc. ("Defendant" or "TLG"), and in support hereof alleges as follows:

## NATURE OF ACTION

1. Plaintiff brings this action for declaratory relief pursuant to 28 U.S.C. §2201 et seq. seeking a judicial declaration that it has no duty to defend or indemnify Defendant TLG in connection with the lawsuit styled *NNN Durham Office Portfolio, 1, LLC, et. al v. Highwoods Realty Limited Partnership, et al.*, Case. No. 12-CVS-3945, which was filed in the State Superior Court for Durham County, North Carolina, and was pending before the North Carolina Business Court and, upon information and belief, has now been appealed to the North Carolina Court of Appeals (the "Underlying Action," the "NNN Plaintiffs," and the Complaint in that action, the "NNN Complaint").[1]

---

[1] Plaintiffs in the Underlying Action are also plaintiffs in a related action, *NNN Durham Office Portfolio I, LLC, et. al v. Grubb & Ellis Company, et. al*, Case No. 10-CVS-4392, which has been consolidated with the Underlying Action for trial. However, HCC understands and believes that although that action is related to the Underlying Action, the specifics of that action are not relevant to this action for declaratory relief.

2. The factual allegations made herein concerning the Underlying Action are intended to, and should be construed only as, repetitions and/or restatements of the allegations made by the NNN Plaintiffs in the NNN Complaint, and not as an endorsement or independent assertion of such allegations. Nothing contained in this Complaint is intended to reflect that any of the factual allegations made by the NNN Plaintiffs in the NNN Complaint are correct, or that any of their claims have merit.

## PARTIES

3. At all material times, Plaintiff HCC is and was a corporation doing business as an insurance company organized and existing under the laws of the state of Texas with its principal place of business located in Houston, Texas, and thus is considered a citizen of Texas.

4. At all material times, Defendant TLG is and was a North Carolina corporation with its principal place of business in Raleigh, North Carolina, and is thus considered a citizen of North Carolina.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 USC § 1332 because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is appropriate in the United States District Court for the Middle District of North Carolina under 28 U.S.C. § 1391(b)(1), because, pursuant to 28 U.S.C. § 1391(c)(2) and (d), Defendant is deemed a resident of this District. In addition, venue is proper in this District pursuant

to 28 U.S.C. § 1391(b)(2) because the Underlying Action is pending in a State Court in this District and the events giving rise to the Underlying Action occurred in this District.

## GENERAL ALLEGATIONS

### I. Source and Limited Purpose and Scope of Allegations

7. NNN Plaintiffs are currently prosecuting the Underlying Action pursuant to the NNN Complaint, a copy of which is attached hereto as Exhibit A and incorporated herein by reference.

8. HCC seeks, hereby, *inter alia*, a declaration that it has no duty to defend any insured or purported insured in the Underlying Action based on the allegations and claims of the NNN Complaint. This Court, sitting in diversity jurisdiction, will apply the substantive law of North Carolina.

9. HCC recognizes that North Carolina courts have held that the duty to defend "is ordinarily measured by the facts as alleged in the pleadings" in the underlying action. *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986). In determining whether a duty to defend exists, "the facts as alleged in the complaint [in the Underlying Action] are to be taken as true and compared to the language of the insurance policy. If the insurance policy provides coverage for the facts as alleged [in the complaint in the Underlying Action], then the insurer has a duty to defend." *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 7, 692 S.E.2d 605, 611 (2010) (emphasis added). Conversely, the insurer has no duty to defend if the facts alleged by the plaintiff in the Underlying Action "are not even arguably covered by the policy." *Waste Mgmt.*, 315 N.C. at 692, 340 S.E.2d at 378.

10. Accordingly, the allegations made in the immediately following § II (entitled "The Underlying Action") are derived entirely from the NNN Complaint. Chief Business Court Judge

James L. Gale has now found that TLG committed no wrongdoing in the Underlying Action. However, because the allegations in the NNN Complaint must be taken as true for the limited purpose of determining HCC's duty to defend, HCC herein repeats those allegations as they were made by the plaintiffs in the Underlying Action, without assessment, comment or judgment by HCC. Accordingly, nothing herein should be interpreted to imply or suggest that any of the allegations in the NNN Complaint are true nor that HCC believes, or has any reason to believe, that such allegations are true.

## II.     The Underlying Action

11.     The Underlying Action arises out of the purchase of commercial property in Durham, North Carolina (the "Property").

12.     The NNN Complaint alleges, in pertinent part, that:

    a.     The Property is located near Duke University-owned Durham Regional Medical Center and consisted of a group of office buildings leased to commercial tenants.

    b.     The NNN Complaint further alleges that in October 2006, TLG was engaged as the exclusive real estate agent for the sale of the Property by its then-owner, Highwoods DF 98/29, L.P. ("Highwoods").

    c.     The NNN Complaint further alleges that to facilitate the sale of the Property, in November 2006, TLG prepared a Confidential Offering Memorandum (the "Memorandum"), which was provided to prospective purchasers, including some of the individual plaintiffs in the Underlying Action.

    d.     The NNN Complaint further alleges that the Memorandum was also provided to Triple Net Properties, LLC ("Triple Net"), which ultimately purchased the Property

from Highwoods and subsequently or contemporaneously sold fractional interests in the Property to the plaintiffs in the Underlying Action as tenants in common.

e. The NNN Complaint further alleges that the Memorandum was material to their individual decisions to purchase the Property.

f. The NNN Complaint further alleges that the Memorandum contained false statements of material facts, including misleading projections of the Durham commercial real estate market and the likelihood of lease renewals by the existing tenants of the Property.

g. The NNN Complaint further alleges that TLG in fact had actual knowledge in early 2007, prior to the sale, that the existing tenants were going to relocate to a new facility in a different geographic area and that TLG knowingly used false renewal probabilities and built fraudulent projections on them, representing a prediction of the future that they knew was false at the time it was published.

h. The NNN Complaint further alleges that TLG knowingly and intentionally made the misleading statements and false projections in the Memorandum knowing that plaintiffs in the Underlying Action would rely on it and with the purpose of selling the Property immediately before the existing leases expired.

i. The NNN Complaint further alleges that on or about December 22, 2006, knowing that Triple Net intended to fund its bid for the Property through the tenant in common mechanism, TLG informed Triple Net that it had been chosen as the purchaser. In so doing, TLG chose Triple Net to act as a promoter or sponsor to market and sell shares of the Property as a security to tenants in common in a tenant

5

in common 1031 transaction, a popular investment structure for investors seeking IRS Section 1031 benefits.

j. The NNN Complaint further alleges that the interests sold to the NNN Plaintiffs constituted securities under applicable securities laws.

k. The NNN Complaint further alleges that each of the Limited Liability Companies named as plaintiffs in the Underlying Action was created expressly for the purpose of purchasing the Property through the tenants in common structure.

l. The NNN Complaint further alleges that the sale of the Property was finalized on or about March 12, 2007 and a deed was recorded in the Durham County Registry deeding title to the Property from Highwoods to the plaintiffs in the Underlying Action and other entities and tenants in common.

m. The NNN Complaint further alleges that on May 22, 2007, seventy (70) days after the sale of the Property to the NNN Plaintiffs, NNN Realty (Triple Net's parent), and Grubb & Ellis, Inc. (an independent national corporation that was not involved in the transactions at issue in the NNN Complaint) announced they would be merging.

n. The NNN Complaint further alleges that the merger of NNN Realty and Grubb & Ellis, Inc. somehow made Triple Net and TLG related entities and that such relationship was a material fact withheld from the NNN Plaintiffs. However, the NNN Complaint does not allege facts that tie TLG to Grubb & Ellis, Inc. or to negotiations between Grubb & Ellis, Inc. and Triple Net.

o. The NNN Complaint further alleges that ultimately, the majority of tenants, including the majority tenant, failed to renew their leases and moved out of the

Property. Further, the real estate market did not improve as projected and rents decreased.

p. The NNN Complaint further alleges that on or about October 2011, the Property was sold in a foreclosure action allegedly damaging each of the Plaintiffs.

13. The plaintiffs in the Underlying Action asserted the following seven (7) claims against TLG: (1) Fraud; (2) Fraud in the Inducement; (3) Violation of the North Carolina Securities Act, North Carolina General Statutes, Chapter 78A; (4) Unfair and Deceptive Trade Practices; (5) Negligent Misrepresentation; (6) Civil Conspiracy; and (7) Punitive Damages pursuant to N.C. Gen. Stat. §1D-1. The plaintiffs in the Underlying Action seek compensatory, consequential and punitive damages or, in the alternative, rescission of the sale of the Property, as well as attorney's fees.

14. By an order of February 19, 2013 (the "2013 Order"), the trial court dismissed all of the above causes of action against TLG except for claims for secondary violation of certain securities laws. A copy of the 2013 Order is attached hereto as Exhibit B.

15. On August 17, 2015, all defendants in the Underlying Action (including TLG) filed motions to dismiss and/or for summary judgment on all remaining claims pending against them.

16. By an order of December 5, 2016 (the "2016 Summary Judgment"), the trial court dismissed all remaining claims then pending in the Underlying Action. A copy of the 2016 Summary Judgment is attached hereto as Exhibit C.

17. The 2016 Summary Judgment disposed of the Underlying Action as to all the parties thereto, leaving nothing to be judicially determined between them in the trial court. Accordingly, pursuant to North Carolina jurisprudence, it was effectively a "final judgment," subject however to a potential appeal by the underlying plaintiffs.

18. Upon information and belief, following entry of the 2016 Summary Judgment, NNN Plaintiffs filed a Notice of Appeal of the 2013 Order and 2016 Summary Judgment, which appeal remains pending.

### III. The Policy

19. HCC provided professional liability errors and omissions insurance coverage to TLG under policy number H710-16319, with effective dates of January 1, 2010 through January 1, 2011 (the "Policy"). A copy of the Policy is attached hereto as <u>Exhibit D</u>.

20. The insurance under the Policy is afforded on a claims made and reported basis, with a $2,000,000 per claim/$3,000,000 aggregate limit of liability, including claim expenses. *Id.*

21. The Policy provided coverage, in pertinent part, as follows:

> **I. INSURING AGREEMENT**
>
> The Company shall pay on behalf of the Insured any Loss and Claim Expenses, in excess of the Deductible subject to the Policy's Limit of Liability, as the Insured shall become legally obligated to pay as a result of a Claim(s) made against the Insured for a Wrongful Act(s) arising from Professional Services as set forth by Endorsement to this Policy, provided always that: (1) the Claim is first made against the Insured and reported to the Company, in writing, during the Policy Period or Extended Reporting Period (if applicable); (2) the Insured has no knowledge of such Wrongful Act prior to the Inception Date of this Policy; and (3) such Wrongful Act takes place on or after the Retroactive Date set forth in the Declarations Page of this Policy and prior to the end of the Policy Period.
>
> **II. DEFENSE, INVESTIGATION & SETTLEMENT**
>
>     a) **Defense**
>
> The Company shall have the right and duty to defend any covered Claim(s) brought against an Insured alleging a Wrongful Act(s). The Company has the sole right to select and appoint legal counsel to

represent the Insured as respects any covered Claim to which this Policy applies, except as set forth in Section VII.(e) of this Policy. The Company's duty to defend any Claim(s) shall cease upon exhaustion of the applicable Limit of Liability.

The Company has no duty to defend any Claim(s) not covered by this Policy.

b) **Investigation and Settlement of Claim(s)**

(2) The Company shall have the right in its sole discretion to conduct any investigation it deems necessary and may, with the consent of the Insured, make any settlement of any Claim(s) it deems reasonable and necessary. If the Insured refuses to consent to any settlement recommended by the Company, then the Company's liability for such Claim shall not exceed the amount for which the Claim could have been so settled plus Claim expenses incurred up to the date of such refusal and subject to the applicable Limit of Liability.

### III. DEFINITIONS

Whenever used in this Policy, the terms or words below are defined as follows:

a) **Claim**
"Claim" shall mean a written demand received by an Insured, including the service of suit or institution of arbitration proceeding against an Insured, for compensation of monetary damages for a Wrongful Act allegedly or actually committed by an Insured.

A Claim will be deemed to have been first made against the Insured when any Insured first receives written notice of the Claim.

b) **Claim Expenses**
"Claim Expenses" shall mean: (1) reasonable and necessary fees charged by an attorney designated by the Company; and (2) all other fees, costs or

expenses incurred in the investigation, adjustment, defense and appeal of a Claim if incurred by the Company, or an attorney designated by the Company or by the Insured with the written consent of the Company. However Claim Expenses shall not include salary charges of regular employees or officers of the Company nor salary or wages of the Insured, nor any fees, costs, or expenses incurred with respect to any criminal proceedings or actions against an Insured.

    i)    **Wrongful Act**

"Wrongful Act" shall mean any actual or alleged negligent act, error or omission or breach of duty committed or alleged to have been committed, or for failure to render, such Professional Services as are customarily rendered in the profession of the Insured as set forth by [the Named Insured's Professional Services Endorsement] to the Policy.

22. The Policy also contains the following relevant exclusion:

    **V.    EXCLUSIONS**

This Policy does not apply to any Claim, Claim Expense or Loss

    h)    based upon or arising out of a violation or alleged violation of the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or any other local, state or federal law or regulation dealing with securities;

**IV.    The Prior Coverage Litigation and Efforts to Settle the Underlying Action**

23. One or more of the claims dismissed by the trial court in the 2013 Order were, arguably, covered "Claims" entitling TLG to a defense and/or indemnification under the Policy (such claims, the "potentially covered claims").

24. The only claims against TLG that survived the 2013 Order were claims for alleged securities laws violations. All such claims were specifically excluded from coverage pursuant to Exclusion V.h of the Policy.

25. On May 13, 2013, HCC initiated an action in Durham County Superior Court (the "2013 Dec Action") seeking a declaration that, as a result of the 2013 Order, HCC had no ongoing duty to defend or indemnify TLG in connection to the Underlying Action because the remaining claims, which related only to specifically excluded alleged securities violations claims, were not covered under its policy with TLG.

26. TLG responded to HCC's Complaint in the 2013 Dec Action with an Answer and Counterclaims which, in part, alleged that HCC had a continuing duty to defend TLG in the Underlying Action until all the potentially covered claims in that action were finally resolved.

27. In January 2014, the trial court in the 2013 Dec Action granted TLG's motion for judgment on the pleadings and ordered that HCC had a continuing duty to defend the Underlying Action "until all the potentially covered claims" in that action were "finally resolved."

28. In April 2014, HCC and TLG entered into a consent order, staying the 2013 Dec Action until all potentially covered claims were finally resolved in the Underlying Action.

29. In late 2014, HCC made a settlement offer to the Underlying Plaintiffs. Underlying Plaintiffs tentatively accepted that offer, but TLG refused to consent to the terms of the proposed settlement agreement. As a result, the Underlying Action was not settled at that time.

30. In or about May 2015, the parties agreed to a mutual dismissal, with prejudice, of the 2013 Dec Action subject to HCC's agreement to continue to provide a defense in the Underlying Action until any potentially covered claims against TLG were finally resolved. On

11

Case 1:17-cv-00040-TDS-JLW   Document 1   Filed 01/18/17   Page 11 of 14

May 19, 2015, in accordance with such agreement, the parties mutually dismissed all claims in the 2013 Dec Action.

31. In March 2016, HCC made a settlement offer to the Underlying Plaintiffs (the "March 2016 Settlement Offer") in exchange for a full release of all the potentially covered claims, which were previously dismissed pursuant to the 2013 Order, which offer was subject to the consent of TLG. Underlying Plaintiffs accepted the offer. HCC recommended to TLG that is consent to the March 2016 Settlement Offer, but TLG refused.

32. Had TLG consented to the March 2016 Settlement Offer, it would have incurred no further costs defending the potentially covered claims and would have been released of any and all liability for such claims.

33. Under the terms of the policy cited above, because TLG refused to consent to the proposed settlement HCC is no longer obligated to provide a continuing defense after the date of TLG's refusal to consent, and HCC will never have a duty to indemnify above the amount of the settlement that was accepted by the underlying plaintiffs and rejected by TLG.

## COUNT I – DECLARATORY RELIEF

34. HCC adopts and incorporates by reference the allegations in paragraphs 1 through 34 as if fully set forth herein.

35. HCC defended TLG in the Underlying Action pursuant to a reservation of rights to, among other things, seek a judicial determination of its rights and obligations under the Policy (a copy of the reservation of rights letter is attached hereto as Exhibit E).

36. Even if HCC might otherwise have had an ongoing duty to defend TLG on appeal regarding any such potentially covered claims, HCC's obligation to provide a continuing defense terminated upon TLG's refusal to consent to the March 2016 Settlement Offer.

12

Case 1:17-cv-00040-TDS-JLW   Document 1   Filed 01/18/17   Page 12 of 14

37. Notwithstanding: (a) the clear terms of the Policy, (b) that the potentially covered claims have now been finally resolved in favor of TLG, and (c) that TLG refused to consent to a settlement offer that would have resolved all of the potentially covered claims, TLG has, on one or more occasions, demanded that HCC provide an ongoing defense in connection with NNN Plaintiffs' appeal of the Underlying Action (the "TLG Appeal"). Accordingly, an actual controversy exists between HCC and TLG as to whether the Policy provides any further coverage with respect to the Underlying Action and/or the TLG Appeal.

38. HCC seeks a declaration that HCC's obligation to pay Claim Expenses terminated upon TLG's refusal of the March 2016 Settlement Offer, and that HCC no longer has any duty to defend or indemnify TLG in connection with the Underlying Action and/or the TLG Appeal as a result of such refusal.

39. HCC also seeks a declaration as to its potential duty to indemnify, i.e., that it can never owe any amount above the amount of the March 2016 Settlement Offer that was accepted by the underlying plaintiffs and rejected by TLG.

WHEREFORE, Plaintiff, HOUSTON CASUALTY COMPANY, respectfully requests this Court declare and order that:

1. HCC has no further duty to defend any insured or purported insured in the Underlying Action and/or TLG Appeal;
2. The costs of this action be taxed against TLG;
3. HCC have and recover such other relief as the Court deems just and proper.

This the 18th day of January, 2017.

/s/ Amiel J. Rossabi
Amiel J. Rossabi, N.C. Bar No. 16984
/s/ Gavin J. Reardon

Gavin J. Reardon, N.C. Bar No. 21258
*Attorneys for Plaintiff*
ROSSABI REARDON KLEIN SPIVEY PLLC
3623 North Elm Street, Suite 210 (27455)
Post Office Box 38278
Greensboro, North Carolina 27438
Telephone: (336) 895-4181
Email: arossabi@r2kslaw.com
       greardon@r2kslaw.com

14